# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN RALSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 18-1185-JDT-cgc |
| | ) | |
| TAMARA FORD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On June 27, 2018, Plaintiff Steven Ralston and two other inmates, all of whom are incarcerated at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Ralston separately filed a motion to proceed *in forma pauperis*. (ECF No. 2.) The Court issued an order on September 26, 2018, that, *inter alia*, modified the docket and severed each Plaintiff's case into a separate matter. (ECF No. 4.) The Court then granted Ralston leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The Clerk shall record the Defendants as the former WCF Warden, Tamara Ford;[1] Rosheda White, Unit Manager; and First Name Unknown (FNU) Cleaves, Unit Counselor.

---

[1] The current WCF warden is Arvil Chapman. *See* http://www.corecivic.com/facilities/whiteville-correctional-facility. For purposes of any official-capacity claims against the

Ralston alleges that the WCF no longer has a "protective custody pod" and instead has instituted a new policy, under which inmates seeking protective custody must refuse their cell assignment, receive a disciplinary write up, and transfer to the "refuse cell assignment pod." (ECF No. 1 at PageID 2.) The designated "refuse cell assignment pod," according to Ralston, is in I-Unit. (*Id.*) On April 1, 2018, WCF officials allegedly announced that I-Unit would be an open, general population pod. (*Id.*) Ralston alleges that the Defendants told the inmates that "all of 'you scared motherfuckers will just need to learn how to fight, because CCA is apparently tired of protecting y'alls asses.'"[2] (*Id.* at PageID 2, 4.) Ralston alleges that he is housed in segregation because he previously was assaulted by gangs. (*Id.* at PageID 4.) When he grieved the assault, he was told to "check in to P.C.," which is the protective custody unit that no longer exists at the WCF. (*Id.*) Ralston claims that in I-Unit, the televisions have been stolen, inmates are assaulted daily, violent prisoners sneak in to attack I-Unit inmates, and black mold grows on the walls. (*Id.*) Ralston alleges he showed Counselor Cleaves the mold and grieved the issue to White and Ford but was told simply to "wash it off or something." (*Id.* at PageID 5.)

Ralston seeks a permanent injunction "to ensure that the Whiteville Correctional Facility has an active, running, operational, and secure protective custody segregations housing unit." (*Id.* at PageID 6.) He wants full access to media, disciplinary action taken

---

Warden of the WCF, Warden Chapman should be deemed substituted for former Warden Ford. *See* Fed. R. Civ. P. 25(d).

[2] CoreCivic, formerly CCA, is a private company that manages the WCF. *See* https://www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html.

against the Defendants, removal of all black mold from the cells, and $10,000 in compensatory damages. (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

  (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

  (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Ralston filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To the extent Ralston sues the Defendants in their official capacities, his claims are against CoreCivic, which manages the WCF. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that

4

operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against CoreCivic, Ralston "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Ralston asserts that WCF is the source of the new policy that removed the protective custody pod. He does not allege that CoreCivic instituted this policy. Ralston, however, alleges that the inmates were told the new policy was created, at least in part, "because CCA is apparently tired of protecting" the inmates. (ECF No. 1 at PageID 4.) It was because of this new policy, Ralston contends, that he was forced into a cell with black mold and not protected from assaults by other inmates. Construing Ralston's allegations in his favor, he has sufficiently alleged that CoreCivic put in place the policy that was the "moving force" behind his alleged constitutional deprivations.

The question now is whether Ralston sufficiently alleges that CoreCivic's policy violated any of his constitutional rights. Ralston's allegations that the Defendants failed to protect him from assaults and exposed him to black mold amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is

incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

Ralston fails to satisfy either component of an Eighth Amendment claim. Prison officials must "take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33. However, Ralston does not allege that he personally was the victim of any attack while in I-Unit. He alleges only generally that inmates are assaulted almost daily in his pod.[3] Nor does he allege that he told any named Defendant about a known threat to him in I-Unit and that the threat was ignored. The only complaint Ralston alleges he reported to a named Defendant was the lack of recreation and televisions. Ralston therefore fails to show that he faced conditions posing a substantial risk of serious harm to his health or safety and that any named Defendant knew of and disregarded that risk.

---

[3] The complaint alleges that all three of the Plaintiffs "have been assaulted by gangs that have caused them to live in segregation in the first place." (ECF No. 1 at PageID 4.) The complaint does not allege, however, that any of the Plaintiffs was further assaulted as a result of the new policy that abolishing the protective custody pod.

Ralston also alleges that he faces belittling and "verbal assault almost daily." (ECF No. 1 at PageID 5.) It is well settled that verbal abuse or harassment at the hands of prison officials does not constitute a violation of the Eight Amendment. *See, e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that "verbal harassment was not punishment that violated [inmate's] constitutional rights"). Ralston's allegations of verbal threats and harassment therefore fail to state a claim for relief.

Ralston fails to state a claim regarding his alleged exposure to black mold. "Exposure to black mold may, in an appropriate case, satisfy the objective component of an Eighth Amendment violation." *Morales v. White*, No. 07-2018-STA-DKV, 2008 WL 4585340, at *14 (W.D. Tenn. Oct. 10, 2008). Ralston, however, does not allege that he suffered any injury or harm from being exposed to black mold. Lacking that allegation, he does not state a viable Eighth Amendment claim. *See Vick v. Core Civic*, 329 F. Supp. 3d 426, 452 (M.D. Tenn. 2018); 42 U.S.C. § 1997e(e) (barring civil actions "by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act").

Ralston alleges that the televisions from I-Unit have been stolen and not replaced, which he claims infringes on his right of "access to media." (ECF No. 1 at PageID 5.) There is, however, no constitutional right to television in prison. *See Vick*, 329 F. Supp. 3d

at 451 (citing *Rawls v. Sundquist*, 929 F. Supp. 284, 288-89 (M.D. Tenn. 1996), and *Dede v. Baker*, No. 93-2319, 1994 WL 198179, at *2 (6th Cir. May 18, 1994)); *see also Villasana v. Pittman*, No. 3:17-CV-01062, 2017 WL 6017145, at *2 (M.D. Tenn. Dec. 5, 2017) (citing *Madden v. Piper*, No. 1:16-CV-P21-GNS, 2016 WL 7116189, at *3 (W.D. Ky. Dec. 6, 2016), for proposition that "access to amenities like a television . . . is not a fundamental right"); *Williamson v. Ray*, No. 3:15-CV-466-PLR-CCS, 2016 WL 706339, at *4 (E.D. Tenn. Feb. 22, 2016) (citing cases).

For the foregoing reasons, Ralston's complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that Ralston should be given an opportunity to amend his complaint.

In conclusion, Ralston's complaint is DISMISSED for failure to state a claim on which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1).

Leave to amend, however, is GRANTED.  Any amendment must be filed within twenty-one days after the date of this order.

Ralston is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings.  The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each defendant sued in that count.  If Ralston fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE